[Civil No. 3526.   Filed June 19, 1934.]

[34 Pac. (2d) 385.]

CITY OF PHOENIX, a Body Politic and Corporate, JOSEPH S. JENCKES, as Mayor of the City of Phoenix, VERNON CLARK and PETER BLOCK, as City Commissioners of the City of Phoenix, and THOMAS M. SULLIVAN, as Manager of the City of Phoenix, Plaintiffs, v. G. A. RODGERS, as Judge of the Superior Court of the State of Arizona, in and for Maricopa County, THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR MARICOPA COUNTY, and W. C. LEFEBVRE, Defendants.

Mr. F. H. Lyman, City Attorney, for Plaintiffs.

Messrs. Struckmeyer & Jennings, for Defendants.

PER CURIAM.—This is an original proceeding in this court by the city of Phoenix, a municipal corporation, and Joseph S. Jenckes, as mayor, Vernon Clark and Peter Block, as city commissioners of said city, and Thomas M. Sullivan, as manager thereof, against G. A. Rodgers, as judge of the superior court of the state of Arizona in and for the county of Maricopa, and W. C. Lefebvre, asking that this court prohibit the Honorable G. A. Rodgers from proceeding further in the matter of a certain writ of *certiorari* and contempt proceedings thereon now pending in his court, and prohibit the said W. C. Lefebvre from attempting to exercise any right or perform any duty as city manager of said city.

The facts necessary for a determination of this proceeding are not in question and may be stated as follows: On or about the 31st day of March, 1934, W. C. Lefebvre was by the city commission of the city of Phoenix appointed as city manager of said city, and upon the 2d day of April he duly qualified, and from that date, and up to the 24th of May, was

unquestionably both *de jure* and *de facto* city manager.

About the 1st of May, 1934, petitioners Jenckes, Clark and Block took office as mayor and city commissioners, respectively; there being two hold-over commissioners, A. C. Sipes and Lester D. De Mund.

On the 8th day of May, George O. Ford, a citizen of Phoenix, filed with the city clerk a complaint alleging that Lefebvre had been guilty of misfeasance and nonfeasance in office. The complaint contained seventeen specifications, and prayed that a hearing be had upon the charges and that upon such hearing Lefebvre be removed as city manager. On the 9th day of May the complaint was presented to the city commission, and a citation was by it issued to Lefebvre to appear on the 14th day of May and answer the charges. An answer was filed, and on the 14th day of May he appeared for hearing. In his said answer he objected to the jurisdiction of the commission to hear the charges, but his objections were overruled and a hearing was commenced, which continued until the 24th day of May. Evidence in support and denial of the charges was received, and on that day the commission, by a majority vote, declared him removed from his position as city manager.

An application was made immediately to Honorable G. A. Rodgers, as judge of the superior court, praying for a review of the proceedings for removal as above set forth and the issuance of a writ of *certiorari* against the mayor and members of the city commission, and that in the meantime the commissioners and all persons acting under their orders be ordered to desist from further proceedings in the matter to be reviewed. In compliance with the petition for the said writ, one was issued, which contained the following provisions:

"You are, therefore, hereby commanded to certify and return to this court on the 18th day of June, 1934, at 10:00 o'clock A. M., at the courtroom thereof, Division No. 2 in the Courthouse of Maricopa County, State of Arizona, annexed to this Writ, a full, true, and correct transcript of all the papers, records, files, evidence, exhibits and proceedings in your possession or under your control, including all proceedings taken at said hearing, both oral and documentary, in order that the same may be reviewed by this Court and such action be taken thereon as of right should be taken and done.

"And, in the meantime, you, the said Honorable Joseph S. Jenckes, Mayor of the City of Phoenix, A. C. Sipes, Lester D. DeMund, Vernon Clark, and Peter Block, composing the City Commission of the City of Phoenix, and all persons acting under you or under said orders complained of, and all persons having knowledge of this Writ are hereby commanded to desist from further proceedings in the matter so to be reviewed; that no action be taken by you or any of you, or by any persons acting through or under you to enforce or execute said orders complained of, and that you in nowise interfere with the said Petitioner in the discharge of his duties as City Manager. All of said matters mentioned herein are hereby stayed pending his final determination of said proceedings to be reviewed by the above entitled Court."

This writ was served upon the mayor and each of the commissioners.

On the next day after such service, Mayor Jenckes and Commissioners Block and Clark proceeded to appoint one Thomas M. Sullivan as city manager of the city of Phoenix. Thereafter Sullivan attempted to assume the duties of city manager and proceeded, as such manager, to appoint one E. H. Patterson as chief of police of the city, and to inform the various officers and department heads of the city that he was city manager, and that all business of the city was to be conducted by and through him as such manager.

An application was immediately thereafter made to the Honorable G. A. Rodgers, alleging the appointment of Sullivan and his actions as aforesaid and asking that Jenckes, Clark, Block and Sullivan be cited for contempt for disobedience of the order above set forth, and an order to show cause why they should not be punished for contempt of the writ of *certiorari,* theretofore issued, was issued and served upon them. The alleged contemnors appeared and objected to the jurisdiction of the superior court either to make the order to show cause or to find them guilty of contempt, and, after hearing such objections, the Honorable G. A. Rodgers overruled them and ordered the contemnors to file answers therein. A verified answer was filed and evidence taken thereon, and on June 2d the matter was taken under consideration by the court, without any day being fixed for the decision thereof. Thereupon this petition for a writ of prohibition was filed.

Prohibition at common law was a remedy against encroachment on jurisdiction, and its office is to restrain subordinate courts and inferior judicial tribunals from exceeding their jurisdiction, *Camron* v. *Kenfield,* 57 Cal. 550; *Stein* v. *Morrison,* 9 Idaho 426, 75 Pac. 246; and the American courts have almost universally recognized and preserved its original nature and function, and, when either a Constitution or a statute confers authority to issue the writ without limiting or enlarging its extent, it is the common-law writ which is meant. *Camron* v. *Kenfield, supra; State* v. *Hogan,* 24 Mont. 379, 62 Pac. 493, 51 L. R. A. 958; *O'Brien* v. *Trousdale et al.,* 41 Nev. 90, 167 Pac. 1007. It is an extraordinary remedy granted usually only in cases of necessity, and is ordinarily a matter of sound discretion, to be granted or withheld by the court according to the nature and circumstances of the case, particularly when there is another

remedy. *In re James C. Davis,* 262 U. S. 274, 43 Sup. Ct. 574, 67 L. Ed. 979; *Pacific Rolling Mill Co.* v. *State Ind. Acc. Com.,* 191 Cal. 498, 216 Pac. 602. It may, however, be granted notwithstanding the existence of another adequate remedy, for it is a remedy within the sound discretion of the court to which application is made. *Matter of Simons,* 247 U. S. 231, 38 Sup. Ct. 497, 62 L. Ed. 1094; *Hall* v. *Imperial County Superior Court,* 198 Cal. 373, 245 Pac. 814.

In the present case it is obvious that it is of great importance to the city of Phoenix and its inhabitants that it be determined as speedily as possible who is the legal manager of said city, for under its charter the powers of the manager are so broad that its government cannot function properly so long as its other officers and citizens do not know who is the legally chosen manager. Indeed, in the present case it is obvious that it is only because the various parties have realized this and have with commendable public spirit conducted themselves so as to cause as little friction as is reasonably possible, without jeopardizing any of their alleged rights, that it has been possible that the city government of Phoenix could function at all during the last few weeks. Regardless of the fact, therefore, that it is possible there may be other remedies whereby the question at issue can be determined, we think, if that determination can be hastened by assuming that the writ lies in a proceeding of this nature, we should not hesitate to do so.

We therefore approach the consideration of the question upon the theory that prohibition is a proper remedy under the circumstances above set forth. In determining, however, whether the writ should issue, we must always keep in mind that its sole purpose is to determine questions of jurisdiction, and not of fact. In passing upon the present ap-

plication, therefore, we wish it to be distinctly understood that we are in nowise determining whether the city commission had jurisdiction to remove Lefebvre in the manner in which it did, or whether, if it did have jurisdiction, he was guilty or not guilty of any acts for which he could be removed. Neither shall we attempt in any way to determine whether the superior court of Maricopa county did, on the record made before it, properly exercise its discretion in issuing a writ of *certiorari* to review the proceedings of the city commission in their alleged removal of Lefebvre, or whether it should determine fully that such proceedings of removal were or were not sufficient under the law.

The sole questions which we now decide are whether said superior court had jurisdiction (a) to issue a writ of *certiorari* reviewing the proceedings of the city commission in the removal of Lefebvre; (b) to order that Lefebvre be retained as *de facto* city manager pending the final determination of the writ; and (c) to issue a citation for contempt against the petitioners in this proceeding, under the circumstances appearing on the face of the record before us.

We have had the general question of the nature of jurisdiction before us in the very recent case of *City of Phoenix* v. *Greer,* 43 Ariz. 214, 29 Pac. (2d) 1062, 1064. Therein we state as follows:

"But an erroneous action on the part of the trial court does not necessarily mean that it acted without jurisdiction. Jurisdiction is of three kinds: (a) Of the subject-matter; (b) of the person; and (c) to render the particular judgment which was given. We have discussed what is meant by jurisdiction of the subject-matter very thoroughly in the case of *Tube City Mining etc. Co.* v. *Otterson,* 16 Ariz. 305, 146 Pac. 203, 206, L. R. A. 1916E 303. Therein we say:

"'The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry; not

whether its conclusion in the course of it is right or wrong. *Foltz* v. *Railway Co.,* 60 Fed. 316, 8 C. C. A. 635; *Board of Commissioners of Lake County* v. *Platt,* 79 Fed. 567, 25 C. C. A. 87.

" 'In the Foltz Case the conclusion of the court was expressed in these words:

" ' " ' 'Jurisdiction of the subject-matter' is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud." . . .

" 'Whether a complaint does or does not state a cause of action, so far as it affects the question of jurisdiction, is tersely stated in the case of *Winningham* v. *Trueblood,* 149 Mo. 572, 51 S. W. 399, in a quotation from 1 Elliott, Gen. Prac. § 320, as follows:

" ' " "Whether a complaint does or does not state a cause of action, is, so far as concerns the question of jurisdiction, of no importance; for, if the complaint states a case belonging to a general class over which the authority of the court extends, there is jurisdiction, and the court has power to decide whether the pleading is good or bad."

" 'Speaking of the question of jurisdiction, Mr. Justice JOHNSON, of the Court of Appeals of New York, says:

" ' " "Jurisdiction does not relate to the right of the parties, as between each other, but to the power of the court. The question of its existence is an abstract inquiry, not involving the existence of an

equity (right) to be enforced, nor the right of the plaintiff to avail himself of it if it exists. It precedes these questions, and a decision upholding the jurisdiction of the court is entirely consistent with a denial of any equity (right), either in the plaintiff or in any one else. . . . Have the plaintiffs shown a right to the relief which they seek? and has the court authority to determine whether or not they have shown such a right? A wrong determination of the question first stated is error, but can be reexamined only on appeal. The other question is the question of jurisdiction." *People* v. *Sturtevant,* 9 N. Y. (5 Seld.) 263, 269, 59 Am. Dec. 536.' "

The proceeding in the superior court of Maricopa county was one of *certiorari* to review the action of the city commission in attempting to remove Lefebvre from his position as city manager. The charter of the city of Phoenix contains the following provision in chapter 2, section 4, thereof:

"The City Manager shall be appointed by the Commission and shall hold his office until removed for cause by the Commission."

In the case of *In re Farish,* 18 Ariz. 298, 158 Pac. 845, 849, a very like situation arose. Farish was city manager of the city of Phoenix, whose charter at that time contained a provision substantially similar to the one just quoted. Charges were filed against him before the commission, and after a hearing he was ordered removed, whereupon he instituted a proceeding by *certiorari* in the superior court against the then city commission for the purpose of determining whether they had exceeded their jurisdiction in the alleged removal. The court took jurisdiction of the case, rendered judgment thereon, and the matter was appealed to this court. While we did not expressly state that *certiorari* would lie to review the actions of the city commission, we assumed that it would, and laid down the rule as to

what should be considered on such a proceeding, as follows:

"The extent of the power of the court to review upon *certiorari* is limited to a determination of the question as to whether the inferior tribunal, board, or officer has exceeded its jurisdiction and whether it has regularly pursued the authority of such tribunal, board, or officer. The court has no power to weigh the evidence and revise the judgment, if jurisdiction exists and the authority was regularly pursued. It may not substitute its judgment for the judgment of the inferior tribunal, board, or officer upon the merits of the controversy. The charges may have been unfounded, the evidence in support thereof slight, and the judgment rendered by the commission may have done the appellant a great injustice; and, if the court were vested with authority to weigh the evidence, it might so hold, but the determination of these matters the Legislature has withheld from the courts. . . . "

In other words, under a charter provision such as that obtaining in the city of Phoenix, it is for the court upon *certiorari* to determine whether any of the charges preferred against the city manager were legal causes for removal and whether there is evidence sufficient to sustain such charges. But in case there is a conflict in the evidence or the weight to be given it or as to the credibility of the witnesses, the decision of the commission is final upon those points, in the same manner as the verdict of a jury or the findings of a trial court are in similar matters.

It is contended that under the Farish case the court should have denied the petition herein on the ground that it shows on its face there was evidence sufficient to sustain the charges. We cannot consider that question in this proceeding, for, as said in *City of Phoenix* v. *Greer, supra,* it does not go to the jurisdiction, and can therefore be considered only on appeal.

We hold, therefore, that the superior court of Maricopa county had jurisdiction to review the proceedings of the city commission in which Lefebvre was removed as city manager by a writ of *certiorari,* and that we should deny a writ of prohibition directing it to desist from its consideration of the case.

The second question is whether in the issuing of the writ the court exceeded its jurisdiction when it prohibited the commission from interfering with Lefebvre in the discharge of his duties as city manager. Section 4393, Revised Code of 1928, in referring to the writ of *certiorari* says:

· "§ 4393. *Contents of writ; stay of proceedings; service of writ.* The writ shall command the party to whom it is directed to certify fully to the court issuing the writ, at a specified time and place, and annex to the writ, a transcript of the record and proceedings named in the writ and *requiring the party in the meantime to desist from further proceedings in the matter to be reviewed.* The words requiring the stay may be inserted or omitted in the writ, in the discretion of the court; but if omitted, the power of the inferior court or officer shall not be suspended, nor the proceedings stayed. The writ shall be served in the same manner as a summons in civil action, except when otherwise directed by the court." (Italics ours.)

It will be noted therefrom that the stay of proceeding is left to the discretion of the court issuing the writ. The question then is, When there has been an attempt to remove a public officer, and a court reviews the proceedings on removal through a writ of *certiorari,* has it jurisdiction under such a provision to, in effect, continue the original incumbent in office until the final determination of the writ, or is there a vacancy which the appointing body cannot be prohibited from filling, and does such appointment give the new appointee authority which he cannot be pre-

vented from exercising until the final determination of the proceedings?

Under the common law the issuance of the writ of *certiorari* of itself acted in the same manner as a *supersedeas* in the ordinary action, and it is generally held that, under statutes similar to ours, when the stay is granted by the court, it has the same effect.

So far as we have been able to ascertain, there are but four reported cases in the United States where an attempt was made, after an officer had been removed by a presumably competent tribunal, to retain him in office by a stay of proceedings pending a review of the legality of such removal by *certiorari*.

In 1902 in the case of *People ex rel. Croker* v. *Sturgis*, 39 Misc. 448, 80 N. Y. Supp. 194, 198, the relator had been dismissed from his position as chief of the New York fire department after a trial had on charges duly made. The writ of *certiorari* was issued and a stay granted preventing the actual removal of the relator pending a determination of the writ of *certiorari*. An application was made to the court which issued the stay, to vacate so much of it as prevented the execution of the order of removal. In New York, as in Arizona, the granting of a stay was discretionary, and the learned trial judge who had previously issued the stay stated as follows:

" . . . Irrespective of the merits of this particular proceeding, I should deem it a dangerous principle and a bad precedent to invoke the extraordinary remedy of a stay in what is, in its last analysis, simply a disciplinary proceeding, which has resulted in the dismissal of an inferior by a superior officer. The interests of the public, the efficiency within the department itself, the respect for authority and superiority which is the condition precedent to effective work, and, especially in this case, the harmony of relationship and the indispensable co-operation that should exist between the head of the de-

partment and its chief, so that the best results may be achieved, all require that there shall at this intermediate stage be no interference with the course events have taken . . . ''

and quashed so much of the stay as retained the relator in his position, but in his whole discussion of the case assumed as a matter of course that the jurisdiction to stay the removal did exist.

A similar question came up later in *People ex rel. Loevin* v. *Griffing,* 164 App. Div. 529, 150 N. Y. Supp. 209. The lower court had issued the stay, and an appeal was taken from such order to the appellate division of the Supreme Court. It was again assumed that the jurisdiction to issue the stay existed, but the decision on appeal was that it was an abuse of discretion to issue it under the circumstances.

The third case where the jurisdictional question was raised is *School District No. 20, Carter County,* v. *Walden,* 146 Okl. 19, 293 Pac. 199, 201. In that case proceedings were brought, according to law, before the county superintendent of public instruction, to remove a member of a certain school board. The charges were tried and an order of removal entered. Application was then made to the court for a writ of *certiorari,* which was duly issued, but service was not made on the county superintendent until after he had filled the vacancy caused by the alleged removal. Thereafter the writ was served, and upon the hearing an order was made enjoining the county superintendent from recognizing the newly appointed member of the school board and directing him to recognize the removed member as such. The court said:

" . . . The writ commanded the county superintendent of public instruction to send up the record. In so far as the writ stayed further proceedings by the county superintendent of public instruction it was a valid order. In so far as the district court of Carter county attempted to enjoin A. L. Senter from acting as a member of the school board of which he

was a member it was void. In so far as the order of that court attempted to restore J. E. Cruce to the position on the school board from which he had been removed prior to a hearing of the response to the writ of *certiorari* the order was void. The purpose of the proceeding in Carter county was to review the record of the county superintendent of public instruction and to restore Cruce to his office if the county superintendent of public instruction did not have the jurisdiction to remove him from that office. There is no authority in a district court in a proceeding for a writ of *certiorari* to restore a removed officer to office pending a hearing of the response to the writ. If upon the hearing of the response to the writ it is adjudged that the school district officer was removed by the county superintendent of public instruction without authority of law in that officer, the subsequent proceedings would be to restore him to his office.

"We think that the orders of the district court of Carter county and the district judge thereof, Asa E. Walden, are void and unenforceable and the enforcement thereof should be prohibited, in so far as they direct other than that the county superintendent of public instruction send up the record of the proceedings had before him and in so far as they stay further proceedings by the county superintendent of public instruction in the removal of J. E. Cruce from office."

It will thus be seen that in New York it is held the jurisdiction exists, while in Oklahoma it is held that it does not. It should be observed, however, that in the New York cases there had been no attempt made to fill the office before the writ was served, while in the Oklahoma case a new member of the board had already been appointed. It will also be noted upon an examination of the cases that in none of them was there any discussion as to the reason for the respective rules laid down, in regard to the jurisdiction of the court to make the order.

The fourth case is from our own state, being *Sims et al.* v. *Moeur,* 41 Ariz. 486, 19 Pac. (2d) 679. In that proceeding the Governor of Arizona had cited the members of the Industrial Commission to appear before him under the provisions of section 1391, Revised Code of 1928, which reads in part as follows:

" . . . The governor may remove any member of the commission for inefficiency, neglect of duty, malfeasance, misfeasance, or nonfeasance in office. . . . "

After a full hearing, the Governor ordered the removal of the incumbents, and appointed three other men to fill their places. Application to this court was made for a writ of *certiorari* to review the action of the Governor in the removal, and we issued the writ, and by its terms continued the old commissioners in office pending our determination on the writ. The question of our jurisdiction to do so was apparently acquiesced in by all of the parties to the case, for our action was never objected to in any manner. This case might well be considered decisive, so far as Arizona is concerned, as to the jurisdiction of a court, on the issuance of a writ of *certiorari* to review the removal of a public officer, to retain the old officers in their places pending a final determination on the writ. Since, however, the jurisdiction was not questioned and we had no occasion therefore to state in our formal opinion whether or not it existed, we shall not consider the case as conclusive on the question.

There have, however, been other cases, not in *certiorari,* where the general principle now under discussion, as to the extent to which a *supersedeas* in a matter involving the removal of a public officer goes, has been discussed. The case of *Fawcett* v. *Superior Court,* 15 Wash. 342, 46 Pac. 389, 390, 55 Am. St. Rep. 894, is the principal one supporting the position of petitioners, while *Morton* v. *Broderick,* 118 Cal. 474, 50 Pac. 644, is cited by respondents. In the

first case, Fawcett had been declared by the city council of Tacoma to be elected as mayor of that city, and a certificate of election was issued to him, and he entered upon and took possession of the office. Shortly thereafter one Orr, claiming to have been elected to the office, notwithstanding the determination of the city council, filed an information in the nature of a *quo warranto* to test the title to the office. Upon the trial of the issue presented by the pleadings in that proceeding, it was adjudged that Orr was entitled to the office, and a judgment of ouster was entered and Fawcett ordered to deliver all the books, papers, and property belonging to the office to Orr. Fawcett gave notice of appeal and filed a bond to stay proceedings, and retained possession of the office and the property belonging thereto, whereupon the superior court was petitioned to cite Fawcett for contempt in not surrendering the office to Orr. At this stage of the proceedings Fawcett applied to the Supreme Court of Washington for a writ of prohibition to restrain the superior court from attempting to punish him for the alleged contempt in retaining possession of the office. The appellate court, in passing upon the proposition, said:

"The position of the relator herein seems to be that the bond which was filed in the *quo warranto* proceeding not only stays the proceedings, but suspends the judgment of ouster, so that he may, pending the appeal, continue to exercise the functions of the office from which the judgment, by its terms, expressly excluded him. On the other hand, the respondent contends that a bond to stay proceedings, conditioned as required by law, will not stay or suspend a judgment rendered in a proceeding upon an information in the nature of a *quo warranto* to determine the title to a public office. . . .

"The question, then, is, what is the effect and nature of a judgment of ouster from a public office? It seems to be the settled rule that such a judgment divests the person ousted of all official authority

whatever, and fully and completely excludes him from the office as long as the judgment remains in force. High, Extr. Rem. (2d Ed.) § 756; Mechem, Pub. Off. § 497. And a judgment in favor of a relator in a proceeding by information to try the title to a public office is, from its very nature, self-executing. By its own force, and without the aid of process or further action of the court, it accomplishes the object sought to be attained. So far, then, as such a judgment is concerned, there is nothing upon which a stay bond can operate, except an execution for costs, where, as in this case, costs are awarded to the relator. As soon as the judgment was rendered in favor of Mr. Orr, he became the mayor of the city of Tacoma, and was entitled, by virtue of section 685 of the Code of Procedure, to proceed to exercise the functions of the office, after qualifying as required by law, unless the judgment was absolutely annulled by the filing of the stay bond; and we are clearly of the opinion, as already intimated, that it was not. The result of per-. mitting such a judgment to be suspended by an appeal and stay bond would for obvious reasons, in many instances, in effect, completely destroy the relator's remedy. If such a result had been intended or contemplated by the legislature, they would, we think, have so stated, or at least would have required the filing of a bond by the appellant providing for the payment to the respondent of all damages sustained by reason of being deprived of the office during the pendency of the appeal, as they have done in cases where a respondent is kept out of the possession of property. The following authorities are in point on the questions here involved: (citing authorities). In the case last cited the supreme court of Indiana ruled that a judgment suspending an attorney from practice executed itself, except as to costs; and that the granting of a *supersedeas* only suspended the right to enforce the collection of costs, and did not allow the attorney to practice pending the appeal. That is an interesting and instructive case, and the principle upon which the decision rests is equally applicable to the case at bar. In *Jayne* v. *Drorbaugh, supra* [63 Iowa 711, 17 N. W. 433];

which was an action upon a *supersedeas* bond given in a proceeding to test the title to an office, the court held that the plaintiff, who was the successful party, had, under the statute of Iowa, which is almost identical with ours, the right to the possession of the office, and that the judgment was not suspended by the appeal and stay bond. The conditions of the bond in that case were substantially in the language of the bond now under consideration, and in the course of the opinion the court said: 'When it has been determined by the district or circuit court, in a proper proceeding, that a person is entitled to the possession of a civil office to which he claims to have been elected by the people, an appeal to this court should not have the effect to deprive such person of such office pending the appeal, unless the statute in terms so provides. It is provided by statute that "an appeal shall not stay proceedings on the judgment," unless a bond is filed conditioned as provided by law. Code, § 3186. The bond sued on is thus conditioned. . . . We think, if the intent was that the bond and appeal should have the effect to prevent the plaintiff from taking possession of the office, the statute, in fixing the terms and conditions of the appeal bond, would, in clear and distinct terms, contain provisions to that effect. It is obvious, however, it does not do so.' This language, in our judgment, is peculiarly applicable to this case. And in *People* v. *Stephenson, supra* [98 Mich. 218, 57 N. W. 115], the same rule was announced, under a statute as to stay bonds in terms fully as general as our own. . . . ''

In the case of *Morton* v. *Broderick, supra,* a proceeding was instituted in the superior court to remove the members of the board of supervisors of the city and county of San Francisco for malfeasance in office. A judgment of removal was entered against them, and they immediately gave notice of and perfected their appeal to the Supreme Court. Thereafter the Governor of the state and the mayor of San Francisco, each deeming that vacancies were created by the judgment, and that in himself was

vested the power to fill them, appointed twelve new supervisors. The old board, notwithstanding this, continued to meet from time to time to transact business, on the theory that, by the perfecting of the appeal, it was retained in office until its determination. A proceeding was then brought in the Supreme Court to compel the city auditor to compute taxes on an assessment-roll prepared by the old board. The court in passing upon the case said as follows:

"What may be the effect of the appeal in a case such as this is a question fully answered in *Covarrubias* v. *Supervisors,* 52 Cal. 622. Covarrubias, sheriff of the county, had been removed from office by summary civil procedure. Upon the day of the entry of the judgment he perfected his appeal. The supervisors, believing a vacancy to exist in the office, were about to fill it, when Covarrubias made application to the supreme court for a writ of prohibition. It was held that he had an appeal from the judgment of the trial court, and that the appeal, when well taken, *'ipso facto* operated a *supersedeas.'* Whether, then, the judgment in such a case be considered a self-executing judgment or not, the appeal is equally self-executing, and restores the officer to his rights of office until its final determination. Nor could the facts, if they be deemed proved, that the new board was appointed, and qualified, and met, and organized before the judgment was entered and the appeal taken, affect in any way the legal situation. The case is not that of an official who, after judgment, retires from his office and leaves it to his appointed successor, who, clothed with its insignia, and surrounded by its *indicia,* acts in an official capacity. Thereafter, if the ousted officer who had thus voluntarily retired should endeavor in *mandamus* to assert a legal title against one who was clearly *de facto,* the court, as has been said, would, in such a proceeding, go no further than to determine that the office was full *de facto.* But in this case there was never any voluntary surrender or withdrawal upon the part of the old board. It maintained its right to act, and continued to act, as a board of

supervisors during all the time. So, also, it is true, did the new board; but there cannot be at one and the same time two *dc facto* officers, any more than there can be two *de jure* officers. This case is one where two contending boards are simultaneously acting and claiming the right to act. In such a case it is sometimes said that the title to the office *de jure* draws to it the possession *de facto*. Leeds v. *Atlantic City,* 52 N. J. Law 332, 19 Atl. 780 [8 L. R. A. 697]. This, however, is but a concise expression of the rule that in *mandamus,* where conflicting boards or officers are acting simultaneously, each under a claim of right, since there cannot be two *de facto* boards or officers, that one alone will be recognized as the *de facto* board or officer which is acting at the time under the better apparent legal right. (Citing cases.) Until the judgment of removal the old board was the unquestioned *de jure* and *de facto* body. Upon the day of the entry of the judgment an appeal from it was perfected. The members of the old board never abandoned their offices, but always acted and claimed the right to act. Even if it be said that the judgment was self-executing, and that a vacancy existed upon the entry of judgment by operation of law, and without process of the court, it must necessarily follow, under the decision in the Covarrubias case, that it existed only until an appeal from the judgment was perfected, and that this appeal restored the incumbent to his rights of office until final determination of the controversy, and that, therefore, the better present, apparent, legal right is with the old board.''

In the Broderick case the appeal was said to operate automatically as a *supersedeas,* while under our statute the stay of proceedings is optional with the court, but when it is granted the effect is the same as any other *supersedeas.*

These seem to be the two cases which deal most fully with the question of whether, in a proceeding to determine whether an officer has been legally removed by an inferior tribunal, the incumbent may be kept in office by a *supersedeas.*

In proceedings for the removal of a public officer, while they frequently take a form which would indicate on its face that the contest is a private one between two individuals, since as a matter of fact these removals are only authorized, as a rule, on the ground that the retention of the incumbent in office is inimical to public interest, we are of the opinion that the real party whose rights the proceeding is meant to protect is the public, and that therefore it is public and not private interests which should be considered in deciding who should be the *de facto* officer while the legality of the removal and the new appointment are being tested in the courts. In determining how this can best be done, there are two things which must be considered. On the one hand, as was said in *People* v. *Sturgis, supra,* it is a dangerous thing to stay a disciplinary proceeding which has resulted in the dismissal of an officer, especially when that officer and the removing and appointing power act in close interrelation, as in the case of the city manager and city commission of Phoenix. To have public officers with interlocking duties working at cross-purposes always tends to lower the efficiency of public work. On the other hand, the charter by its very terms limits the power of removal to ''good cause'' shown, which clearly implies there may be certain circumstances under which the manager will continue in office, even when it is the wish of the commission that he be removed. And it may work an even greater disturbance of efficient public work when an officer like the city manager, who appoints and removes a large percentage of the employees of the city, is changed repeatedly, so that his subordinates, who may, and under the political practice usually obtaining in American cities generally do, change with him, are repeatedly removed and restored at short intervals. The situation then may arise, as it has in this case, wherein the court which

issues the writ and is asked to stay the removal must determine whether the public interest will be best subserved by keeping a hostile but experienced city manager temporarily in office, or by removing him and allowing a new, and presumably unexperienced, appointee to undertake the work, with all the upheavals and changes in personnel which naturally follow his entry into office, until it is determined whether or not the old officer and all of his subordinates shall be reinstated. The alternative a court should choose will depend, of course, on its opinion as to which one will do the least damage to public business. But it seems obvious to us that both reason and experience require that the courts should have the jurisdiction to make the choice. We therefore hold, following the precedents laid down in the New York and California cases and the one which we have already made, for the reasons which we have just stated, in the case of *Sims et al.* v. *Moeur, supra,* that the superior court of Maricopa county had the jurisdiction, when it issued its writ of *certiorari,* to determine whether the best interests of the city of Phoenix required the retention of Lefebvre as city manager *de facto* pending a final determination of the case, or whether those interests would be best subserved by allowing the new manager, chosen by the commissioners on the theory that a vacancy did exist, to assume the duties of that office as manager *de facto* until the matter was finally decided and to issue its writ accordingly. The action the court has taken is of course, like all other discretionary actions permitted to a court, reviewable for an abuse of discretion upon an appeal to a proper tribunal, but it cannot be reviewed by us in this particular kind of a proceeding. We hold, therefore, that this court should not prohibit the superior court from ordering that Lefebvre continue as city manager *de facto* until its final determination on the writ of

*certiorari* and preventing all persons from interfering with his discharge of his duties as such manager *de facto*.

We come then to the third and last question necessary for us to decide in this particular proceeding. Did the court have the jurisdiction to cite Jenckes, Clark, Block and Sullivan for contempt of the writ of *certiorari?* The writ, which was served upon the three first named and not upon Sullivan (for at the time of its issuance and service he had not been designated by the commission to succeed to the office of city manager, presumably left vacant by their removal of Lefebvre), is as follows:

"To desist from further proceedings in the matter so to be reviewed; that no action be taken by you or any of you, or by any persons acting through or under you to enforce or execute said order and judgment complained of, and that you in nowise interfere with the said petitioner in the discharge of his duties as city manager."

The order citing for contempt was on its face based on the affidavit of Lefebvre which is set forth in the petition for a writ of prohibition. This affidavit charges, so far as Jenckes, Block and Clark are concerned, that they did, after the service of the writ on them, "proceed to appoint one Thomas M. Sullivan as City Manager of the City of Phoenix and did then and there direct the said Thomas M. Sullivan to carry out the duties of the City Manager of said City of Phoenix." We are of the opinion that the appointment of Sullivan by the majority of the city commission under the circumstances set forth did not constitute a contempt of that order. The order was that they should desist from further proceedings in the matter to be reviewed, and should take no action to enforce the removal. The appointment of Sullivan was an independent and collateral act, made, it is true, as a result of the removal, but not in the

furtherance thereof, and could have no effect whatever on the removal of Lefebvre. We think that the mere appointment of a prospective successor to an officer who had been removed, who will take office, if, as and when his removal is held by the final authorities to be valid, is in no sense an attempt to enforce or execute the order of removal. It merely provides for a successor when the removal is consummated.

The order also provided that they should not interfere with the petitioner in the discharge of his duties as city manager, and here again the choice of Sullivan in and of itself in nowise interfered with Lefebvre's discharge of his duty. It would only be in case that Sullivan attempted to intrude into the office, after he had been chosen by the commission, that there would be any interference. So far as Sullivan is concerned, the order was never served on him, and, since his appointment was not in and of itself a violation of the order, he could not be held responsible for violating it on account of any acts which he might perform before he was served. Had he been served with an order forbidding him from attempting to assume the duties of Lefebvre, the situation would be entirely different.

Were the matter before us upon an appeal from a judgment finding Jenckes, Clark, Block and Sullivan in contempt of the orders of the superior court already issued and served, we should be compelled to hold that, on the showing made, those orders had not been violated. But, since it comes before us on a proceeding wherein we can consider only the jurisdiction of the superior court, and not whether it exercised that jurisdiction properly, and since that court obviously has jurisdiction to hear a charge of contempt of its own orders, we must hold that the writ of prohibition should not issue. We have no doubt, however, that the court in its action upon the citation will be guided by the views which we have thus ex-

pressed. Should, however, Sullivan, or any other person, after service upon them of a proper writ, attempt actually to interfere with the discharge by Lefebvre of his duties as city manager *de ·facto,* before a final determination of the writ of *certiorari,* or a vacation of the stay of proceedings by the court which granted it, there is no doubt that such person would be in contempt of court and liable to punishment accordingly. Because of the importance of the question involved to the city of Phoenix, we have stated the law governing every phase of the case before us as fully as possible on the record as it appears. We are satisfied that the petitioners were not actuated by any intent to disobey a proper order of the superior court, but believed honestly and in good faith, upon the authority of the Oklahoma case above cited, that their actions were not a violation of any valid order. So far as the appointment of Sullivan is concerned, we have stated that they were not. So far as any attempt on the part of the latter to assume the duties of the office of city manager is involved, such attempt would be a contempt if he were properly served with the writ. It is to be hoped that a final decision in this case would be reached at an early date, so that the city government of Phoenix can function in a peaceful and orderly manner.

Since for the foregoing reasons the superior court of Maricopa county has not exceeded its jurisdiction in any of the matters complained of, and since in this form of proceeding we cannot consider the merits of the case, but can issue the writ prayed for only when the lower court has acted without jurisdiction, the petition for a writ of prohibition is denied.

The Honorable HENRY D. ROSS, not having been present when this case was argued, took no part in the decision thereof.