402 P.2d 212

**Geraldine Mary ZIMMERMAN, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona ÍN AND FOR the COUNTY OF MARICOPA, R. C. Stanford, Jr., Judge, Anthony R. Slenski and Albert Slenski, Respondents.**

No. 8608.

Supreme Court of Arizona.

En Banc.

May 19, 1965.

Robert J. Spillman, Phoenix, for respondents.

Jennings, Strouss, Salmon & Trask, Phoenix, for petitioner.

Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, as amicus curiae.

Robert Begam, Phoenix, for American Trial Lawyers Ass'n, Arizona Chapter, as amicus curiae.

Lesher, Scruggs, Rucker, Kimble & Lindamood, Chandler, Tullar, Udall & Richmond, Holesapple, Conner, Jones, McFall & Johnson, Leonard Everett, Murphy & Vinson, Tucson, as amicus curiae.

Rees, Estes & Browning, Tucson, as amicus curiae.

Alan Philip Bayham, Phoenix, as amicus curiae.

Favour & Quail, Prescott, as amicus curiae.

Kramer, Roche, Burch, & Streich, Phoenix, as amicus curiae.

Evans, Kitchel & Jenckes, Phoenix, as amicus curiae.

Wilson, Compton & Stoops, Flagstaff, as amicus curiae.

UDALL, Justice.

This is an original proceeding wherein Geraldine Zimmerman, hereinafter called defendant, seeks a writ of prohibition against the Superior Court of Maricopa County from proceeding any further in a discovery matter arising out of a personal injury action brought by Mr. and Mrs. Anthony Slenski, hereinafter called the plaintiffs.

It should be noted here that prohibition is an extraordinary remedy granted only in rare cases, and is a matter of sound discretion, to be granted or withheld by the court according to the nature and circumstances of the case. City of Phoenix v. Rodgers, 44 Ariz. 40, 34 P.2d 385 (1934). Because the question raised by the case at bar is important to the entire discovery procedure we granted the alternative writ of prohibition. See Di Pietruntonio v. Superior Court, 84 Ariz. 291, 327 P.2d 746 (1958).

On January 7, 1962, defendant was involved in an automobile accident in Phoenix, Arizona, with plaintiffs. On April 2, 1963, the plaintiffs commenced an action in the Superior Court of Maricopa County seeking damages for personal injuries and permanent disability allegedly as a result of the accident. The issue was joined and interrogatories were served upon the defendant. Defendant answered all interrogatories except interrogatory number four which states as follows:

"4. Has any investigation or surveillance been conducted by any person or persons including the defendants as defined herein concerning any of the events and matters as set forth in plaintiff's complaint, including but not limited to plaintiff's activities and/or physical condition and/or earnings and/or employment prior to or subsequent to the collision of January 7, 1962? If the answer is 'yes', set forth the following:

a. The name and address of the person or persons conducting same and the date or dates thereof.

b. The name and address of the person or persons upon whose request the investigation or surveillance was conducted.

c. The reason or reasons for the investigation or surveillance, setting forth the name and addresses of the person conducting same and the subject matter of said surveillance or investigation.

d. The names and addresses of all persons having an original and/or copy of any writing concerning said surveillance and/or investigation.

e. A description of each and every writing concerning said investigation or surveillance and the name and address of each person who has prepared same and the date thereof.

f. The dates, times and places of any and all oral conversations concerning said investigation or surveillance along with the name and address of all persons present."

Defendant timely objected to this interrogatory, however the Superior Court ordered defendant to answer parts (a), (b)

and (d) above. Defendant petitioned this Court for a writ of prohibition on November 27, 1964, and the alternative writ of prohibition was issued on December 15, 1964.

The question now before this Court is whether in a personal injury case a defendant will be compelled to answer interrogatories concerning any investigation or surveillance conducted by the defendant. In the case at bar this question is raised by the refusal to answer an interrogatory and is thus a problem under Rule 33 of the Rules of Civil Procedure, 16 A.R.S. However, to regard this matter as solely a Rule 33 question would be too narrow a view. The identical problem may arise under Rule 34 dealing with the production of documents once it has been identified. In fact the problem may arise in any phase of the discovery procedure.

To illustrate the problem let us take the hypothetical case where the defense has a surveillance movie which disproves plaintiff's allegations. Since the movie may be a potential exhibit must it be revealed at pre-trial? The question may present itself early in the discovery procedure such as in an interrogatory like the case at bar; or it may arise later in the deposition stage or as illustrated above at pre-trial. For this reason the question cannot be answered for one of these stages of the discovery proceeding without at the same time answering it for the others. It would be absurd to require that an exhibit be produced at pre-trial but not on interrogatory, or on production of documents and likewise it would be absurd to require a display at the beginning of the discovery procedure if it were not to be required at the end. The question presented is therefore fundamental to the entire discovery procedure.

The defendant contends that the information sought by the plaintiff in the case at bar by their interrogatory is immune from discovery for the reason that (1) it is the "work product" of the attorney and (2) it is "impeachment" evidence.

## Work Product

This Court has previously held that the "work product" of an attorney is immune from discovery. Dean v. Superior Court, 84 Ariz. 104, 324 P.2d 764, 73 A.L.R.2d 1 (1958). The question thus presented is whether the matter sought by plaintiff here is the work product of defendant. In Dean this Court defined work product as "memoranda, briefs and writings prepared by counsel for his own use, as well as related writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories" prepared by the attorney "in anticipation of litigation."

Work product to which Dean gives absolute immunity does not include all material prepared by an attorney in anticipation of litigation. Dean held that statements obtained by counsel in preparation

for trial are not work product and are discoverable upon showing of good cause. In State ex rel. Willey v. Whitman, 91 Ariz. 120, 370 P.2d 273 (1962) we held that demonstrative evidence in the form of exhibits prepared by counsel for trial is not work product. In fact in Dean we said "that designated * * * *photographs,* * * * not privileged, *which constitute or contain evidence relating to any matters within the scope of the examination permitted by Rule 26(b)* which are in the possession, custody, or control of a party, *should be produced* for inspection and copying or photographing upon a showing" of good cause. The scope of discovery under Rule 26(b) includes "any matter, not privileged, which is relevant to the subject matter" of the action or which is "reasonably calculated to lead to the discovery of admissible evidence."

■ We think that if surveillance of the plaintiff has been conducted on behalf of the defendant with respect to activities of the plaintiff since the accident, whether it be statements of the observing person or movies taken by the observing person, such matter would not be dissimilar to the statements of witnesses obtained by counsel in preparation for trial in Dean or the demonstrative evidence in the form of exhibits prepared by counsel for trial in Whitman, neither of which was held to be work product. If, for example, there were surveillance movies taken in the case at bar, we

do not think they would fall into the category of "memoranda, briefs and writings prepared by counsel for his own use, as well as related writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories." We feel it is clear from the above cases and rules that the information sought by plaintiff in the case at bar is not immune from discovery because it constitutes the "work product" of the attorney.

Defendant calls our attention to a Missouri case which they contend is applicable. In State ex rel. St. Louis Public Service Co. v. McMillian, 351 S.W.2d 22 (Mo.1961) the Court was faced with the identical problem we have here. The court held that the interrogatory need not be answered because if surveillance movies were taken they would be immune from discovery since they would constitute the work product of the attorney. It must be noted, however, that Missouri does not have the federal rules and their rules expressly define work product which is construed much broader than Arizona's work product protection. The Missouri Court said that surveillance movies *like diagrams, maps and drawings* were the "work product" of counsel in preparation of its defense. We do not subscribe to such a broad definition of work product and the Missouri case is thus not persuasive nor applicable here.

Defendant also cites the California case of Suezaki v. Superior Court of Santa

Clara County, 58 Cal.2d 166, 23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073 (1962) for the proposition that surveillance films are the work product of an attorney. Again like Missouri, California's definition of work product is broader than the Arizona definition. Because of the broader concept of work product in California it does not enjoy the absolute immunity it does in Arizona. Thus, in California surveillance movies may be classified as work product but they still may be discoverable.

For the foregoing reasons we find that the order of the Superior Court requiring defendant to answer parts (a), (b) and (d) of plaintiff's interrogatory number four is not invalid for the reason that the information sought is the work product of the attorney.

*Impeachment*

Defendant next contends that the information sought by plaintiff in the interrogatory would be used as impeachment evidence at the trial and is therefore immune from discovery.

■ A brief discussion of the nature of impeachment evidence would be helpful here. Unlike substantive evidence which is offered for the purpose of persuading the trier of fact as to the truth of a proposition on which the determina- tion of the tribunal is to be asked,[1] impeach- ment is that which is designed to discredit a witness, i. e., to reduce the effectiveness of his testimony by bringing forth evidence which explains why the jury should not put faith in him or his testimony.[2] Examples of impeachment evidence would include prior inconsistent statements, bias, attacks on character of a witness, prior felony con- victions, and attacks on the capacity of the witness to observe, recall or relate. See Udall, Arizona Law of Evidence, §§ 61– 69, pp. 79–112.

■ Evidence may be both substantive and impeaching. In our earlier hypotheti- cal of the surveillance movie, the movie may be substantive proof of the plaintiff's injuries or lack thereof and it may be used to discredit her testimony. Another ex- ample would be evidence that a party was intoxicated. It is substantive evidence of negligence or contributory negligence and it also serves to discredit this party.

■ An examination of the Arizona cases and the Rules of Civil Procedure do not prevent discovery of evidence because it may be used for impeachment. In Dean we said:

"Where the moving party has obtain- ed statements of prospective witnesses, discovery should not be denied as to

1. I Wigmore on Evidence, § 1, p. 3.

2. III Wigmore on Evidence, § 874, p. 362; Udall, Arizona Law of Evidence, § 61, p. 79.

the production of statements of the same witnesses obtained by the adversary when good cause is shown that the same are sought to impeach or determine the credibility of the witnesses." 84 Ariz. at 113, 324 P.2d at 770.

In the very recent case of State Farm Insurance Company v. Roberts, 97 Ariz. 169, 398 P.2d 671 (1965) plaintiff sought to obtain a copy of the statement given by the defendant to his insurer. We held the statement was discoverable although it was clear that the statement was to be used for impeachment. We said:

"In the instant case it is clear the statement was sought to impeach or determine the credibility of defendant and the lower court properly found a showing of the requisite 'good cause' to exist." 398 P.2d at 674.

The defendant contends that if surveillance evidence is discoverable, its impeachment value will be lost because the plaintiff will then change her story to circumvent the impeachment evidence. They argue that occasionally plaintiffs commit perjury and misstate their injuries and surveillance movies give some protection against such frauds which will be lost if it must be revealed before trial. A similar argument was raised in Watts v. Superior Court, 87 Ariz. 1, 347 P.2d 565 (1959). In that case plaintiff gave a statement to defendant's claims investigator shortly after the accident. After suit was filed plaintiff sought to obtain a copy of her statement from defendant under Rule 34.

"Counsel for the petitioner asserts that if a copy of the statement is given to plaintiff that she will be able to accommodate or reconcile her testimony at the trial with what she said in the statement and that petitioner will be unable to use the statement for impeachment purposes or to obtain admissions and reveal inconsistencies in her testimony.

"The purpose of discovery procedure under our Rules of Civil Procedure is to avoid the element of surprise and prevent the trial of a lawsuit from being a 'guessing game'. * * * We fail to understand how the petitioner could in any way be harmed or deprived of any defense by producing a copy of the statement. If the statement given by the plaintiff at the hospital is the true version of the occurrence, how can the petitioner be harmed if plaintiff's testimony at the trial is consistent with the statement.

"In the event the statement contains admissions made by the plaintiff which are material to the defense of petitioner, these remain unchanged by producing the statement for inspection, and would still be admissible upon a proper showing." 87 Ariz. at 5, 347 P.2d at 567.

This same argument was made in a Minnesota [3] case involving almost the same fact situation as the case at bar. The court in Boldt v. Sanders, 261 Minn. 160, 111 N.W. 2d 225 (1961) said:

"Defendant's entire argument proceeds on the premise that defendant's evidence which plaintiffs seek to elicit constitutes the unblemished truth which, if prematurely disclosed, will prevent defendant from revealing to the jury the sham and perjury inherent in plaintiffs' claims. While defendant disclaims such assumption, it is implicit in his position that witnesses whose testimony is designed to impeach invariably have monopoly on virtue and that evidence to which the attempted impeachment is directed is, without exception, fraudulent." 111 N.W.2d at 227.

The Arizona cases beginning with Dean to Whitman, to our most recent pronouncement in State Farm clearly do not give immunity to evidence because it may be used for impeachment purposes. This is also in accord with the Arizona Rules of Civil Procedure. Rule 26(b) defines the scope of discovery as including "any matter, not privileged, which is relevant to the subject matter involved in the pending action" or "appears reasonably calculated to lead to the discovery of admissible evidence." The rule only requires that it be relevant and not privileged.

Defendant next contends that the recent amendment to Uniform Rule VI by this Court, 17 A.R.S., prevents discovery of the information sought in this case. In this rule concerning the production of exhibits at pre-trial it states "Counsel shall not offer any other exhibits at the trial, except when offered for impeachment purposes * * *." Defendant cites the federal case of Bogatay v. Montour Railroad Company, 177 F.Supp. 269 (W.D.Pa.1959), which involved a similar interrogatory and a similar local rule regarding pre-trial. That case held that to require defendant to answer the interrogatory would subvert the spirit of the local rule which protects impeachment matter from disclosure. We disagree with that case. We feel that to give this interpretation to our Uniform Rule VI giving a broad protection to that class of evidence generally described as "impeachment" would be to subvert the spirit of discovery procedures of the Rules of Civil Procedure and the Arizona case law.

We interpret Uniform Rule VI(b) and (f) (where there is no pre-trial conference) to allow counsel not to disclose exhibits which he is going to use solely for impeachment purposes which would not be within the scope of discovery as defined by Rule 26(b). This would include demonstrative evidence which does not meet the relevancy requirements of Rule 26(b)

---

3. Minnesota also has adopted the Federal Rules of Civil Procedure.

and is therefore not discoverable but which would be admissible in evidence solely for impeachment purposes such as the record of a prior felony conviction of a witness or some exhibit which would reveal a bias or motive of a witness for testifying. This class of exhibits to be used solely for impeachment purposes which is not discoverable under the scope of Rule 26(b) does not now have to be produced at pre-trial under Uniform Rule VI as recently amended. We think this interpretation is the only one consonant with the spirit of our discovery rules.

Surveillance evidence and the like, although useful for impeachment purposes under certain circumstances, also contains substantive evidence relevant to the matters in litigation and should therefore be discoverable. We agree with the statement of the Minnesota court in Boldt:

"Not only may impeaching testimony be the subject of impeachment itself, but in this case the information which plaintiff seeks bears on the fundamental issue of the nature and extent of the injuries which Mrs. Boldt sustained in this accident. She is entitled to know what evidence defendant will produce on this issue in view of his denial that her condition is serious or is attributable to this accident."

We therefore hold that the lower court was correct in ordering defendant to answer plaintiff's interrogatory number four, parts (a), (b) and (d).

The alternative writ of prohibition is quashed.

LOCKWOOD, C. J., and BERNSTEIN and McFARLAND, JJ., concurring.

STRUCKMEYER, Vice Chief Justice (dissenting).

I feel compelled to register my disapproval of the decision in this case.

On November 17, 1961, this Court, under the authority of the Constitutional Amendment of 1960, Article 6, § 5, promulgated Uniform Rules of Practice for the Superior Court of Arizona. Last year in the spring of 1964, the Court indicated its interest in their amendment in those areas where experience demonstrated a need for change. The State Bar Association Standing Committee on the Rules for Practice and Procedure appeared before the Court and recommended certain modifications. These recommendations were in part disapproved by minority members of the committee who also appeared and presented their views.

In October, after extensive consideration of the suggested modifications, the Court publicized a proposed tentative draft of modifications, requesting comment from those interested. The proposed draft did not prohibit the disclosure at pre-trial con-

ference of evidence which might be used solely for impeachment purposes. In response, communications were received by the Chief Justice, members of the Court and the Court Administrator. The reaction of some members of the Bar was that the rules should specifically provide that impeachment evidence would not be required to be disclosed.[1]

On the 31st of December, 1964, effective March 8, 1965, the members of this Court, after discussion in which the question of disclosure of impeachment evidence was considered at length, adopted an order amending the Uniform Rules of Practice. Rule VI relative to pre-trial conference was extensively amended. The italicized portion of Rule VI(b) was added:

"Each attorney who will actually try the case shall attend the pretrial conference and there produce all exhibits * * *. *Counsel shall not offer*

*any other exhibits at the trial, except when offered for impeachment purposes* * * *."* (Emphasis supplied.)

The same is true as to Rule VI(f) (6) (iii):

"* * * [C]ounsel shall not offer any exhibits at the trial, other than those listed in (ii) above, *except when offered for impeachment purposes* * *."* (Emphasis supplied.)

The majority state:

"It would be absurd to require that an exhibit be produced at pre-trial but not on interrogatory, or on production of documents and likewise it would be absurd to require a display at the beginning of the discovery procedure if it were not to be required at the end."

It is indeed absurd to require discovery on interrogatories if it is not required later at pre-trial. I do not think this Court should

---

1. For example, the Honorable Robert O. Lesher, a former Justice of this Court, wrote to Chief Justice Jesse Udall on November 19, 1964, in part, as follows:

"Second, on Page Eight you propose to amend Rule VI (A) by adding a subdivision (5). I have discussed this with my partners and with other members of the trial bar here, and I think that I reflect a rather widespread sentiment in violently objecting to this proposed subdivision of the rule. * * * Fraud in personal injury cases is now so widespread as no longer even to surprise us. The exaggeration of injuries, not to say the outright manufacturing of them is commonplace. The only defense we have now against the constant perjury by plaintiffs in personal injury cases as to the nature and extent of their disabilities is the right to make secret and undercover photographic and other investigation of these people. There is no lawyer in this branch of the profession that is not fully aware of the number of occasions on which such investigation alone has prevented the grossest miscarriage of justice, based on outright perjury by alleged injured plaintiffs. To require that I tell the plaintiff everything that I have done to protect myself against his perjury on the witness stand is to rob my defendant of what is often his best and only defense to the claim."

fluctuate willy-nilly, blowing hot and cold from moment to moment and day to day. Consistency has some virtue. The Court having charted a course, it should be adhered to until a reasonably satisfactory trial has demonstrated a need for change.

I am further in disagreement with the decision on the merits. There are cases that can be construed both for and against the discovery of impeachment evidence. Their examination leaves the issue inconclusive so that in the end the controversy must be determined as a policy decision and practical considerations should be the guideline. For a similar reason the Supreme Court of the United States adopted the "work product" exception to discovery in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. There the Court said that proper preparation of a client's case demands that he assemble information and plan his strategy without undue and needless interference; and, "That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests." 329 U. S. 495, 511, 67 S.Ct. 385, 393.

Within the past three or four decades a very substantial area of litigation arising out of the automobile negligence case has developed. It has given rise to special problems. Every lawyer is aware that there are plaintiffs who commit deliberate perjury in exaggeration of the extent of their injuries. There are also a great many more who unconsciously magnify their disabilities. The best defense, and perhaps the only one since the sympathies of the jury are with the injured, is to conduct a thorough investigation into the claimed injuries as a possible basis for the refutation of those claims. The investigation may be in whole or in part under the direction of the attorney for the defendant and the decision is his and his alone as to when and under what circumstance it is to be used.

It should be emphasized that there is here sought to be discovered one particular category of facts; that is, what the defendant or his agents know about the plaintiff's injuries by reason of investigation or surveillance. The opinion in this case should be concerned with nothing more. It should not be broadened to include all areas of potential impeachment, each of which may present particular problems requiring a case-to-case determination.

The category of surveillance evidence, which is the only issue before the Court, has two obvious attributes: First, it pertains to facts which come into existence after an accident occurs. As such, it has nothing to do with the merits of the plaintiff's right of action. Second, it almost invariably concerns facts which are better known to the plaintiff than to the defendant, facts which in all fairness should be known equally to both parties but which, because of their nature, often are impos-

sible for the defendant to discover with certainty. It is, therefore, a fertile field for fraud and magnification, and a field in which the parties are not on even terms. Because of the strong public policy against perjury and because the parties are often not on even terms in the presentation of evidence of the exact extent of a plaintiff's injuries, a defendant should not be required to disclose the results of his surveillance.[2]

This does not mean that there is embraced a "sporting theory" of litigation for nothing is hidden from the plaintiff which he does not already know. Rather, I call it "sporting" to take from a defendant the ability to surprise a dishonest witness thereby leaving the cause vulnerable to perjury. As has been aptly said, "An honest witness cannot be discredited and a dishonest one ought to be."

The majority treat this factual situation which arises out of an application under Rule 33 as also involving Rule 34. A distinction should be observed. Rule 33 is addressed to the adverse party. Rule 34 provides that a party may inspect or copy documents, papers, books and other tangible things *when good cause is shown*. The majority, by treating the two rules as one, has in effect held that there is always good cause to disclose impeachment evidence. I disagree.

It is my opinion that justice can be best served by requiring a defendant to disclose under Rule 33 whether there has been a surveillance or an investigation. Then, *but only if a good cause can be shown why it would be unfair to a plaintiff to withhold the results of surveillance reports and photographs*, would I permit a party to invoke Rule 34. Good cause should not be considered as established on the simple proposition that the plaintiff does not know what the results of the defendant's surveillance might show for realistically the reason can be but to discover how well adverse counsel has prepared its case on a matter which is already better known to the plaintiff than the defendant. There the matter should be left to the sound discretion of the trial judge.

For the foregoing reasons I dissent.

2. The argument is made that not to disclose leaves the plaintiff open to manufactured or perjured testimony from the defendant's witnesses. I think this is highly unrealistic and implausible. I, personally, know of no instance in thirty years as an attorney in which it has been asserted that a defendant manufactured surveillance evidence. When this becomes a threat to the due administration of justice, then it should be considered whether an automatic disclosure is to be required.