657 P.2d 412

**LONGS DRUG STORES, a California corporation; Ray and Jane Doe Fragie; Gregg and Jane Doe King; Jim and Jane Doe McVeigh; Dixie and John Doe Lard; Lynn and John Doe Schmidt, Petitioners,**

v.

**The Honorable Joseph D. HOWE, Maricopa County Superior Court Judge, Respondent,**

and

**William and Toria Vanee Sorman, Respondents Real Parties in Interest.**

No. 16242–SA.

Supreme Court of Arizona, En Banc.

Jan. 4, 1983.

Fennemore, Craig, von Ammon & Udall by Thomas V. Rawles, Phoenix, for petitioners.

Hocker & Axford by Naida B. Axford, Tempe, for respondents real parties in interest.

FELDMAN, Justice.

By special action, petitioners challenge an order of the trial court which required production of statements and reports. There being no remedy by appeal and the issues raised in this special action being sufficiently important to justify review, *Jolly v. Superior Court of Pinal County,* 112 Ariz. 186, 188, 540 P.2d 658, 660 (1975); *Zimmerman v. Superior Court,* 98 Ariz. 85, 87, 402 P.2d 212, 213 (1965), we accepted jurisdiction pursuant to Ariz. Const. art. 6, § 5(4).

William A. Sorman (Sorman) and Toria Vanee Sorman brought an action in the Superior Court of Maricopa County against the petitioners here, Longs Drug Stores and several of its employees (Longs). Sorman alleged he was wrongfully discharged from his employment with Longs and sought damages for wrongful termination of the employment contract.

The incomplete record before us indicates that immediately after Sorman was terminated, he retained the services of counsel. Longs learned of this and one of its executive employees requested Longs' house counsel, Barker, to gather the facts and render legal advice. Assuming that litigation was possible, if not probable, Barker gathered some information with regard to the nature of the claim, discussed the matter with Sorman's counsel, and then requested that representatives of Farmers Insurance Group (Farmers) undertake an investigation of the circumstances surrounding Sorman's termination. An employee of Farmers undertook an investigation which included discussions with Longs' employees, taking recorded statements made by Longs' employees and "reviewing those statements with such employees." Reports and copies of the statements were then provided to Barker and reviewed by him as part of his evaluation of the case and, presumably, formed the basis for whatever legal advice he may have rendered to Longs.

The investigator took the statements in May of 1982. Sorman later requested production of the statements and reports pursuant to Ariz.R.Civ.P. 34.[1] On August 2, 1982, Longs responded, refusing to produce the statements or reports on the grounds of the "attorney/client and work product privileges." Sorman then moved under Rule 37 for an order requiring Longs to produce the following:

> Any and all reports written by independent investigators included but not limited to George Columbo [the Farmers claims investigator] which describe or in any way relate to plaintiff William Sorman and/or his termination from Longs.

By minute entry order dated October 1, 1982, the trial court granted Sorman's motion. Longs then filed this special action, claiming that the order requiring them to produce the witnesses' statements and investigative reports was arbitrary, capricious and an abuse of discretion. We find that on the facts of this case the breadth of the trial court's order exceeded the limits set by Rule 26(b)(3).

## THE ATTORNEY–CLIENT PRIVILEGE

Longs claims that the reports made by Columbo and statements taken by him are

---

1. The Arizona Rules of Civil Procedure will hereinafter be referred to as Rule _____.

immune from discovery under the attorney-client privilege. A.R.S. § 12–2234. This argument rests upon a two-step analysis. First, Longs claims that Columbo was an agent of its attorney, Barker. Thus, any communications received by the investigator from Barker's "client" were privileged. Second, based upon the recent United States Supreme Court decision in *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981),[2] Longs claims the communications made by Longs' lower-level employees to the investigator were communications from the "client" and were protected by the privilege.

Addressing the first prong of this argument, we recognize that some courts have extended the privilege to communications relayed from client to attorney through the latter's agents and intermediaries, including investigators. *See United States v. Kovel,* 296 F.2d 918, 920–23 (2d Cir.1961); *American National Watermattress Corp. v. Manville,* 642 P.2d 1330, 1333–34 (Alaska 1982); *City and County of San Francisco v. Superior Court,* 37 Cal.2d 227, 234–38, 231 P.2d 26, 29–32 (1951); 1 M. Udall & J. Livermore, Arizona Practice, *Law of Evidence* § 74, at 140–41 (2d ed. 1982). Even assuming, without deciding, that we were to adopt this reasoning, we do not agree that the Farmers investigator was an agent of Barker to the extent that the attorney-client privilege is applicable.

We have previously held that statements taken from an insured by insurance investigators working on a case in anticipation of litigation are not communications to counsel and are not within the attorney-client privilege. *Butler v. Doyle,* 112 Ariz. 522, 525, 544 P.2d 204, 207 (1975); *see also State Farm Insurance Company v. Roberts,* 97 Ariz. 169, 175, 398 P.2d 671, 674 (1965). Longs attempts to distinguish *Butler* on the grounds that the record in this case does not indicate that Farmers was investigating the claim because of any interest of its own as insurer, but was doing so only at the request of Barker. This is true; however, the record also fails to provide any information at all with respect to the reason for Farmers' involvement. Longs argues that on this record the trial court was bound to assume that Farmers had "lent" its claims investigator to Longs for the purpose of making this investigation, and that Farmers was not involved in the case as an insurer. We do not believe the trial judge is required to indulge in assumptions so contrary to common experience. If Columbo had been lent to Longs so that his services were performed only for Longs and it was work in which Farmers had neither interest nor right, then it was incumbent upon Longs to make a specific record on that point.[3] Having failed to do so, Longs

2. The Court in *Upjohn* held that communications made by lower-level Upjohn employees to counsel for Upjohn at the direction of corporate superiors of the company, in order for the counsel to provide legal advice to the company, were protected against compelled disclosure by the attorney-client privilege. *Id.* 449 U.S. at 394, 101 S.Ct. at 685. The Court rejected the "control group" test which applied the privilege only to communications directed to the lawyer from those corporate employees who would be part of the group which would control implementation of the lawyer's advice or instructions. *Id.* at 396, 101 S.Ct. at 686.

3. It is common knowledge that insurance companies perform investigations on claims for which they provide coverage or on which they may have some risk or exposure of coverage. In such situations, the results of their investigation, including the statements which they may take from the insured, are not within the privilege. *Butler v. Doyle, supra.* While it is certainly possible that Farmers might lend its investigator to Longs in a case in which Farmers had no interest as an insurer, so that the Farmers employee was actually acting as an employee of Longs and an agent of its house counsel, the affidavits supporting Longs' motion in the court below fall far short of establishing such an unusual situation. The affidavit of Barker, the house counsel, states that he "requested" Farmers' representative to "undertake an investigation of Mr. Sorman's termination in anticipation of possible litigation . . . ." The affidavit further states that the investigation "undertaken at my direction included" various activities and that the results of the investigation and the statements taken by the investigator "have been provided to me for my review in anticipation of litigation . . . as well as the formation of legal advise [sic] to Longs." No other explanation was given of the relationship between Longs and Farmers. On this record, the trial court was not compelled to assume

failed in its burden of establishing that the material in question fell within the attorney-client privilege. The trial court was correct in concluding that the rule of *Butler v. Doyle* was applicable and that the material was not within the attorney-client privilege.

Having concluded that the investigator was not acting solely as an agent of the attorney, we need not reach the second issue concerning the applicability of the *Upjohn* decision to these facts.

## TRIAL PREPARATION MATERIAL

Longs next asserts that the statements and reports were made and obtained in anticipation of litigation and are therefore immune from discovery under the "work product privilege."

We note at the outset that the concept of "work product" immunity was never a "privilege" in American jurisprudence as it was in England. *Hickman v. Taylor*, 329 U.S. 495, 509–10, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). The Court in *Hickman* recognized, however, "the general policy against invading the privacy of an attorney's course of preparation" that is "so essential to an orderly working of our system of legal procedure." *Id.* at 512, 67 S.Ct. at 394. In order to effectuate this policy and provide protection to material such as witness statements taken during the course of an attorney's preparation, the Court stated that it was incumbent on the party seeking discovery of "relevant and non-privileged facts" in the other party's possession to "establish adequate reasons to justify production."[4] *Id.* at 511–12, 67 S.Ct. at 394.

The Court afforded more protection, however, to materials which reflect the attorney's mental impressions or opinions about a case. The Court reasoned that:

Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 511, 67 S.Ct. at 393–94.

Arizona practice has always conformed to the *Hickman* rule on the question of discovery of an attorney's trial preparation materials. *See Zimmerman v. Superior Court*, 98 Ariz. 85, 402 P.2d 212 (1965); *Dean v. Superior Court*, 84 Ariz. 104, 324 P.2d 764 (1958).

The protection for trial preparation materials was reformulated in the revision of the discovery rules in 1970. In pertinent part, Rule 26(b)(3) now provides:

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

that the Farmers claims investigator was acting solely as an investigator for Longs' house counsel and that the matter was one in which Farmers had no concern whatsoever.

4. When *Hickman* was decided, Rule 34 required a showing of "good cause" in order to obtain an order requiring another party to produce documents. This language was construed by the *Hickman* court as implicitly requiring a showing of necessity by the moving party before such materials would be discoverable. *Id.* at 512, 67 S.Ct. at 394.

The 1970 revisions eliminated the "good cause" language as a predicate to production under Rule 34. With respect to trial preparation materials, Rule 26(b)(3) substituted as a requirement a showing of both a "substantial need" for the materials and an inability "without undue hardship" to obtain the substantial equivalent of the materials by other means. As indicated by the State Bar Committee's Notes to the 1970 amendments, the reformulation was not intended to materially change the previous standard applied to the production of trial preparation materials under the old rule.[5] In addition, trial preparation materials prepared by a party's representative are within the protection of the Rule. As the language of the Rule indicates, this would include a party's insurer. *Butler v. Doyle,* 112 Ariz. at 524, 544 P.2d at 206.

It is clear, therefore, that the statements and reports in this case are trial preparation materials which fall within the protection of Rule 26(b)(3). *Hickman v. Taylor, supra; Dean v. Superior Court, supra.*

With this in mind, we turn now to consideration of that portion of the trial court's order which required production of the statements taken from the witnesses. The standard of review is whether the trial court abused its discretion in determining that the requirements of Rule 26(b)(3) had been met. *Cf. Watts v. Superior Court,* 87 Ariz. 1, 4, 347 P.2d 565, 566–67 (1959).

■ Ordinarily, if witnesses are available and can be interviewed by a party, there will be no grounds upon which to order production of the statements taken by the opposition. *Dean v. Superior Court,* 84 Ariz. at 113, 324 P.2d at 770. If, however, good cause is shown that the statements are sought to impeach or determine the credibility of the witnesses, or there is a sufficient showing of the unavailability, hostility or problems of recollection of the witnesses, then the court may order the production of

the statements. *See Hickman v. Taylor,* 329 U.S. at 511, 67 S.Ct. at 394; *Dean v. Superior Court,* 84 Ariz. at 113, 324 P.2d at 770; 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2025 (1970). Similarly, the trial court may order production upon a showing that the statements contain admissions or are unique because they were taken soon after the event. *Butler v. Doyle,* 112 Ariz. at 524, 544 P.2d at 206.

In this case, Sorman alleges that the statements may contain admissions helpful to the case. Sorman also claims that Barker had instructed Sorman's attorney not to interview any Longs employees except in Barker's presence. Under these circumstances, Sorman argues that it would be impossible to obtain the substantial equivalent of the statements procured by the investigator. The trial court could have determined that witnesses who are employees of the defendant might not be as forthcoming to the plaintiff as ordinary witnesses and that interviews in the presence of defense counsel would not be very useful or informative. Defendant argues that plaintiffs chose to do nothing, let the defense do all the work, and are now attempting to gain the benefits of defendant's preparation. While the record would support a finding to this effect and a consequent refusal to order production, the trial court apparently rejected that contention by ordering production of the statements. On these facts, it was within its discretion to do so.

■ Given the above factors and Sorman's sudden termination without notice or previous warning, we hold that the trial court did not abuse its discretion in its determination that Sorman had a substantial need for the statements and was unable without undue hardship to obtain the substantial equivalent by other means.

---

5. The standards of the [new] Rule [26(b)(3)] are very much in accord with *Dean v. Superior Court,* 84 Ariz. 104, 113, 324 P.2d 764 (1958) .... As in *Zimmerman v. Superior Court,* 98 Ariz. 85, 402 P.2d 212 (1965), the Rule, while it gives strong protection to work product, does not extend the quality of absolute protection beyond the "mental impressions, conclusions, opinions or legal theories" of the person who is entitled to this protection.
State Bar Committee Note.

We have much more difficulty, however, with the portion of the order which would compel production of the reports written by investigators "included but not limited to George Columbo which describe or in any way relate to ... Sorman and/or his termination from Longs." As noted earlier in this opinion, Rule 26(b)(3) expressly extends the protection afforded trial preparation material to material prepared by a party's representatives, including attorneys and insurers.

 From our review of the record, it appears that the reports made by the investigator contained summaries of his interviews with Longs' employees and contained his subjective views and interpretations of the facts he collected. While trial preparation materials such as statements from witnesses may be disclosed upon a showing of substantial need and undue hardship, materials which reveal the attorney's mental processes are entitled to special protection. See *Upjohn Co. v. United States,* 449 U.S. at 400, 101 S.Ct. at 688; *Hickman v. Taylor,* 329 U.S. at 512–13, 67 S.Ct. at 394–95. As we stated in *Dean:*

> [S]tatements of prospective witnesses, whether obtained by counsel in preparation for trial or by other persons, should be disclosed upon a showing of good cause ....[6] In construing this precise point we do not in any manner mean to infer that the work product of the attorney prepared in anticipation of litigation which concerns memoranda, briefs and writings prepared by counsel for his own use, as well as related writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories, are subject to discovery upon a showing of good cause. It is immaterial whether the immunity granted against invading the privacy of an attorney's course of preparation for trial is based upon privilege or public policy as we think the need for immunity is so well recognized that it is

essential to an orderly working of our system of legal procedure.

*Dean v. Superior Court,* 84 Ariz. at 111, 324 P.2d at 769. The different treatment given to trial preparation material which reflects the attorney's mental impressions, conclusions, opinions and theories is now explicitly recognized in the rules. Rule 26(b)(3) now provides that in ordering production of trial preparation material "the court *shall* protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." (Emphasis supplied.) Thus, memoranda or reports which contain a mix of factual information and information containing a lawyer's thoughts and conclusions may be produced if the trial court is able to protect against the disclosure of the lawyer's impressions, conclusions, opinions or theories. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730, 736–37 (4th Cir. 1974); 8 C. Wright & A. Miller, *supra* § 2026, at 231–32; *cf. Jolly v. Superior Court of Pinal County,* 112 Ariz. at 192, 540 P.2d at 664. Where the material being sought, however, contains nothing but impressions, theories and the like, there will ordinarily not be grounds for production. *In re Grand Jury Investigation,* 599 F.2d 1224, 1231 (3d Cir.1979).[7]

In the case at bench, the record falls far short of providing support for an order requiring production of any portion of the reports. The names of witnesses were available through interrogatories and their statements have been ordered produced. The plaintiffs can draw their own conclusions and legal theories from this material without invading the privacy of the preparation of petitioner's attorney or those working for or with him, including the insurer.

Accordingly, we hold that the portion of the trial court's order requiring production

---

**6.** Now, upon a showing of substantial need and inability to duplicate.

**7.** Some courts have held that without exception this type of trial preparation material is immune from discovery. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz, supra; In re Grand Jury Proceedings,* 473 F.2d 840 (8th Cir. 1973). We do not decide that issue in this case.

of the investigators' reports was contrary to settled law and was an abuse of discretion. *Grant v. Arizona Public Service Co.,* 133 Ariz. 434, 652 P.2d 507 (1982).

The prayer for relief is granted in part. That portion of the discovery order which requires production of the investigators' reports is vacated, and the case is remanded for further proceedings.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.