777 P.2d 686

STATE of Arizona, ex rel. Robert K. CORBIN, Attorney General, Petitioner,

v.

Honorable Gloria G. YBARRA, Judge, Division Criminal Four, Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent,

and

EXCEL INDUSTRIES, INC., Harvey Allen Goldvarg, Clyde Arthur Fritz, Wilfred J. Fienhage, Jr., and Ernest Miller, Real Parties in Interest.

No. CV–88–0452–PR.

Supreme Court of Arizona, En Banc.

July 11, 1989.

Robert K. Corbin, Atty. Gen. by Marty A. Woelfle, Asst. Atty. Gen., Phoenix, for petitioner.

Allen, Kimerer & LaVelle by Michael D. Kimerer and Pamela J. Franks, and Derrick & Jurkowitz by Clark L. Derrick and Tom Karas, Debus, Bradford and Kazan, Ltd. by Larry L. Debus and Michael E. Benchoff, Phoenix, for real parties in interest.

Bryan, Cave, McPheeters & McRoberts by Michael D. Hawkins and Kevin P. Gallagher, Phoenix, for amicus curiae Western Technologies.

Streich, Lang, Weeks & Cardon, P.A. by William S. Hawgood, II and Marcia Horn Yavitz, and Evans, Kitchel & Jenckes, P.C. by Amy R. Coy and Timothy R. Hyland, Phoenix, for amicus curiae Arizona Chamber of Commerce and Arizona Ass'n of Industries.

Lewis and Roca by Edward F. Novak, Janet A. Napolitano and John Evans, Phoenix, for amicus curiae Arizona Attys. for Criminal Justice.

FELDMAN, Vice Chief Justice.

The court of appeals held that the work product doctrine did not protect a report prepared by an expert retained at the instruction of criminal defense counsel. *State ex rel. Corbin v. Superior Court*, 161 Ariz. 181, 777 P.2d 679 (Ct.App.1988). We granted review to examine the boundaries of the work product doctrine with respect to such reports. *See* Rule 8(b), Ariz.R.P.Spec.Act., 17B A.R.S. and Ariz. Const. art. 6, § 5(4).

## FACTS AND PROCEDURAL HISTORY

This issue arises from the criminal prosecution of Excel Industries, Inc. and certain of its corporate officers and managers (collectively defendants). Excel manufactures cultured marble in Phoenix and Tucson. The state alleges that defendants violated the Hazardous Waste Management Act (the Act), A.R.S. §§ 49–921 to –928.

A March 1986 inspection of Excel's Phoenix facility by the Arizona Department of Health Services (DHS) is the genesis of this case. DHS sent Excel a copy of the inspection report. Although the investigation originally was non-criminal, in May 1986 Excel's corporate counsel learned a criminal investigator from the attorney general's office had contacted one of Excel's managers. Counsel also learned the state had conducted a soil test in a lot located behind Excel's Phoenix facility. Evidently believing criminal charges might follow, corporate counsel referred Excel and its officers and managers to criminal defense lawyers. The attorney general's office informed one defense attorney that it would

seek indictments for violations of the Act against Excel and several of its officers and managers.

With this knowledge, defendants' attorneys convened a series of joint defense meetings, primarily to educate themselves in the pertinent legal area. At a meeting on June 11, 1986, Robert Scott, an employee of Western Technologies (Western), met with counsel and explained the technical matters involved in hazardous waste issues. Western is a company with scientific and technical expertise in detecting and handling hazardous wastes. Western previously sampled and analyzed wastes at Excel's Phoenix facility.

At the meeting with Scott, the lawyers discussed the advisability of having their own soil tests performed. Subsequently, on July 29, 1986, the lawyers agreed to have Scott conduct an independent soil test. The lawyers specified that the test was to provide information to meet potential state charges.

Although the defense lawyers ordered the tests, Western was to perform the testing under a proposal to be submitted to Excel, just as with an earlier study not involved with this case. Negotiations with Western resulted in Western's submitting a protocol that included taking soil samples, testing and examining the samples by certain scientific methods, and reporting findings. On September 24, 1986 Western submitted its written report to Excel, which paid Western's bill.

Three months later, the state served Western with a subpoena duces tecum requiring it to produce the most recent Excel report to the state grand jury or, alternatively, to a designated special agent of the attorney general. The subpoena bore a stamped admonition prohibiting disclosure of "any matter attending to" secret grand jury proceedings.[1] Scott was in charge of handling the subpoena for Western. Scott regarded the report as confidential, and the

necessity of producing it disturbed him. He also worried that the stamped admonition on the subpoena prohibited him from discussing it with defendants' lawyers. Scott checked with Western's counsel, who advised Scott he must comply.

Consequently, on January 6, 1987 Scott responded to the subpoena by taking the Western report to the attorney general's special agent. Scott testified later that he expressed his concern about privilege and confidentiality, but the agent reaffirmed that Scott could speak to no one about the subpoena. The agent testified, however, that he told Scott he could discuss the matter with the assistant attorney general handling the case.[2]

The copies of the report Scott produced had Scott's handwritten notes in the margin. Scott made the notes in response to questions the defense lawyers asked him shortly after Excel received the report. The special agent for the attorney general's office called Scott and asked him to explain his notes. Although Scott felt these notations were extremely confidential, he believed he was required to cooperate, and therefore did explain the notes to the special agent. Before the grand jury, the special agent testified extensively about Western's soil analysis and report, including Scott's notes. On April 21, 1987, the grand jury indicted defendants for violating the Act.

Neither defendants nor their counsel knew until after the indictment that the state had subpoenaed and received the report, or that Scott had explained his handwritten notes to the attorney general's special agent. When they learned of this, defendants filed a motion for a new determination of probable cause under Rule 12.-9, Ariz.R.Crim.P., 17 A.R.S. The alleged, inter alia, the attorney general had violated the work product and attorney-client privileges in obtaining the report.

---

1. The state also subpoenaed Excel's corporate records, but did not require production of the Western report. Excel responded to the subpoena by producing the records required; Western's report was not included.

2. We note that the grand jury secrecy statutes, A.R.S. §§ 13–2812 and –2813, do not explicitly support the advice given by the assistant attorney general.

In December 1987 the trial court conducted an evidentiary hearing on the motion. The court subsequently found Western had prepared the report on the defense lawyers' orders "in anticipation of criminal litigation" and Excel hired "environmental engineer [Robert] Scott ... to conduct confidential soil tests and that those tests had been done and reports prepared after the Defendants had been made aware of and in anticipation of criminal charges." Minute Entry, February 2, 1988, at 2. The court further found that before issuing the subpoena, the attorney general had known the identity of defendants' lawyers but failed to inform them of the subpoena. The court concluded that "given the totality of the circumstances fundamental fairness requires that a new determination of probable cause be made only on evidence properly presented to the grand jury." *Id.* at 3. *See also* Minute Entry, March 15, 1988, at 1 (trial court's order on motion for clarification and reconsideration).

The state challenged the trial judge's order by a special action in the court of appeals. The court of appeals accepted jurisdiction. *Corbin,* 161 Ariz. at 183, 777 P.2d at 681. Citing *State v. Superior Court,* 125 Ariz. 370, 609 P.2d 1070 (Ct. App.1980), the court of appeals noted that violation of the attorney-client privilege or the work product rule could entitle a defendant to challenge a grand jury's probable cause determination. *Corbin,* 161 Ariz. at 186, 777 P.2d at 684. However, the court held that neither the attorney-client privilege nor the work product doctrine protected the Western report. *Id.* at 187, 777 P.2d at 685. Accordingly, the court vacated the trial court's remand order.

Defendants sought review in this court. *See* Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We granted review only on the work product issue. We must, therefore, determine whether Western's report is defense counsel's work product and, as such, protected from discovery.

## DISCUSSION

The work product doctrine originated in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct.

385, 91 L.Ed. 451 (1947). Arizona codified the doctrine in Rule 15.4(b), Ariz.R.Crim.P., 17 A.R.S. (hereafter Rule). The relevant part of the rule states:

(b) **Materials not Subject to Disclosure.**

(1) *Work Product.* Disclosure shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions ... [of] defense counsel or his legal or investigative staff.

In reversing the trial court, the court of appeals assumed Western was part of defense counsel's "investigative staff." *Corbin,* 161 Ariz. at 187, 777 P.2d at 685. The court held, however, that the report contained no theories, opinions, or conclusions within the meaning of Rule 15.4(b)(1). *Id.* at 187–188, 777 P.2d at 685–686. We believe the court of appeals viewed the work product doctrine too narrowly.

A. Was Western part of defense counsel's "investigative staff" within the meaning of the rule?

On review, the state argues Western was not part of defense counsel's investigative staff and consequently the work product doctrine in Rule 15.4(b)(1) does not apply to Western's report. Defendants contend, however, Western was part of their lawyers' staff because they hired Western to produce the report at their lawyers' instructions and after learning the state would bring the matter before the grand jury. They also point out that defense counsel specified the type of investigation needed to meet the anticipated charges. The trial judge's findings support the factual bases of this position.

The comments to Rule 15.4(b)(1) state that the rule is based on the "conception of *Hickman v. Taylor* ... protecting documents only to the extent that they constitute legal research or the 'theories, opinions and conclusions' of the parties *and their agents*" (emphasis added).

In *Hickman,* the plaintiff sought statements, notes, and memoranda concerning defense counsel's interviews with witness-

es. The United States Supreme Court recognized that a lawyer must work "with a certain degree of privacy, and free from unnecessary intrusion by opposing parties and counsel." *Hickman*, 329 U.S. at 510, 67 S.Ct. at 393. Recognizing that justice is best served by thorough preparation of a client's case, the *Hickman* Court noted that this demands that an attorney investigate, compile factual information, plan strategy, and formulate legal theories without interference from the opposing party. *Id.* at 511, 67 S.Ct. at 393. If unfettered scrutiny of an attorney's files were allowed, counsel often would be reluctant to fully inquire into the merits of a case for fear opposing counsel might obtain the information simply by asking. *Id.*

Further examining this problem in *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975), the Court again noted that societal interests were far better served when attorneys have the opportunity for "thorough preparation and presentation of each side of the case." *Id.* at 238, 95 S.Ct. at 2170. The Court stated that attorneys must rely on the assistance of investigators and other agents when preparing for trial. Thus, the Court concluded, the work product doctrine should protect material prepared by such agents just as it protects material prepared by the attorney himself. *Id.* at 238–39, 95 S.Ct. at 2170.

Nothing in *Hickman* or *Nobles* defines the limits of an attorney's staff for protection under the work product doctrine. We must recognize, however, that with modern litigation becoming more complex, trial lawyers must often consult experts to adequately prepare their cases. As *Nobles* recognizes explicitly, and *Hickman* implicitly, the day is past when a lawyer has the time and knowledge to prepare every case he accepts without consulting others.

Lower federal courts have explicitly recognized these considerations when defining the boundaries of the work product doctrine. *See United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961) (given the complexities of modern law practice, attorneys cannot effectively handle their clients' affairs without experts); *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979) (work product rule shields information lawyer obtains from accountants retained by him to assist in financial transaction in preparation of prospective litigation). This court, when discussing the extent of attorney-client privilege and the protection afforded trial preparation material, has recognized that these types of privileges must apply not only to attorneys but to their agents as well. *Longs Drug Stores v. Howe*, 134 Ariz. 424, 429, 657 P.2d 412, 417 (1983) (insurance investigator's reports protected under *Hickman* as trial preparation material). *See also id.* at 427, 657 P.2d at 415 (cases cited dealing with analogous situations involving attorney-client privilege).

This case is the perfect example of a situation in which a lawyer, trained and experienced in criminal law, would need the assistance of experts to prepare an effective legal defense. Gas chromatography by Dubowski's technique to analyze soil samples for chemicals that may fall within the statutory hazardous waste definition is a skill not usually learned in law school. Few lawyers can ever learn, much less litigate, such matters without expert advice. Assuming the adversary process is the best method of attaining the truth, we must encourage lawyers to make the necessary investigations without fear that their very diligence may eventually provide ammunition for the opponent. *See Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94; *Longs*, 134 Ariz. at 428, 657 P.2d at 416.

■ Therefore, we hold that experts retained to investigate and produce reports on technical aspects of specific litigation are part of counsel's "investigative staff" under Rule 15.4(b). Here, the doctrine applies to the retained expert because he prepared his report on the instructions of counsel and to defend against specific criminal charges. Consequently, the rule protects the report and other memoranda of the investigation if the contents of the report would be protected work product had the attorney produced it himself.

We now must determine whether the report contents are protected work product.

### B. Contents of Western's report as work product.

█ Rule 15.4(b) protects reports to the extent they "contain the opinions, theories or conclusions ... of defense counsel or his legal or investigative staff." The court of appeals held the report here did not contain such protected material because it only described "the chemical contaminants found in the soil and their concentrations and notes which chemicals were hazardous wastes.... It contains no theories, opinions or conclusions regarding how the results may effect [sic] the [defendants]." *Corbin,* 161 Ariz. at 187, 777 P.2d at 685. We disagree.

Western created the protocol for the investigation report. The creation of the protocol—specifying the type of investigation, the type and location of samples, the method of taking the samples, and the method of their analysis—necessarily constitutes scientific or engineering theories and opinions. The interpretation of gas chromatography tests is more than a mere lay observation; it requires scientific training. The ability to make expert scientific observations necessarily requires professional judgment and, therefore, opinion and conclusion. Thus, the determination that certain compounds or chemicals exist in the soil samples is a conclusion. Additionally, the determination that certain material in the soil samples is a hazardous waste can be made only by applying the Code of Federal Regulations. Thus, determining whether the substances in the soil samples were hazardous wastes requires the application of law to fact and is, in the truest sense, a conclusion.[3]

Certainly, as the state argues, the report also contains mere factual observation. The problem, however, is that the state subpoenaed the report without notice to counsel or Excel. It thus obtained the entire report—not only factual observations, but also opinions, conclusions, and even Scott's personal notes of conversations with defense counsel. The grand jury saw or heard all of it.

█ We note two other points in passing. First, the state argues that other criminal discovery rules require disclosure of the Western report. Rule 15.2(c)(2) requires that defense counsel provide the prosecution with certain information regarding "experts whom he will call at trial," together with their "written reports and statements." At this stage in the proceedings, however, the expert who prepared the Western report was a non-testifying expert used only for investigation and education of defense counsel. Therefore, Rule 15.2 would not require the disclosure of this report. The work product doctrine is not absolute. Like any qualified privilege, a defendant may waive all or part of the protection by electing to present the expert as a witness. *Nobles,* 422 U.S. at 239–40, 95 S.Ct. at 2170–71; Rule 15.4. If defendants elect to present Scott as a witness, the work product doctrine will no longer provide the protection existing at this time.

Second, the comment to Rule 15.4 refers to the ABA Standards for Criminal Justice § 2.6 (hereafter ABA Standards) to define its scope. Indeed, the court of appeals relied on this ABA standard, approved in 1970, in holding the report was not work product. We note, however, that the ABA Standards have evolved and that the 1980 standard is quite different from the 1970 version. The 1980 standard provides the following:

> This limitation [on discovery of work product], which does not appear in the comparable provision for defense discovery of prosecution reports, has been

---

**3.** The definition of "hazardous waste" as determined by the Environmental Protection Agency and published in the Code of Federal Regulations consists of two pages of small type. *See* 40 C.F.R. §§ 261.2 and 261.3 (1988). However, to be a hazardous waste, a material must first be a solid waste, which may include liquids and certain gases and is defined by some forty pages of small type in the Code. *See* 40 C.F.R. § 261.2 and 50 Fed.Reg. 614 (Jan. 4, 1985). These definitions are adopted by the Arizona Hazardous Waste Management Program. *See* A.A.C. R18–8–261(A).

added to the standard in order to make sure that the *defendant is not required to disclose information that would lighten the prosecutor's burden of establishing guilt beyond a reasonable doubt* or that would undercut the presumption of the defendant's innocence. (Emphasis added.) This new definition would not compel defense counsel to disclose information "that would lighten the prosecutor's burden of establishing guilt beyond a reasonable doubt." With this new standard in mind, we fail to see why the defense should have the responsibility of helping to prepare the state's case.

C. Availability of the information.

On any consideration of the work product doctrine, we must consider an additional factor: availability of the item sought in discovery. If the information sought is equally available to both parties, it receives the broadest protection. *Cf. Hickman*, 329 U.S. at 511, 67 S.Ct. at 394. However, if the information sought is unavailable to one of the parties, the work product doctrine may not protect it, ensuring that both parties have equal access to all information necessary for a fair determination of the case. *Id.*

Indeed, the criminal rules explicitly recognize this principle of equal access to information. Rule 15.1(e) (applying to defendants) and Rule 15.2(f) (applying to the state) allow a party to obtain material on a showing of "substantial need" of the material, which the party cannot obtain without "undue hardship." These rules embody the concepts in *Hickman*. *See* Comment, Rule 15.1(e) (citing Rule 26(b)(3), Ariz.R. Civ.P, 16 A.R.S.) (embodying *Hickman*); *cf.* Rule 26(b)(4)(B), Ariz.R.Civ.P., 16 A.R.S. (allowing a party in a civil case to obtain discovery of information pertaining to non-testifying experts on showing "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions ... by other means").

The soil samples here are physical facts to which the state and defense have equal access. They came from property owned by a third party. The state took soil samples at the beginning of this proceeding,

and presumably could have taken soil samples again any time before the indictment. In short, the state had equal access to the soil, could have taken its own samples, and could have hired its own expert.

No reason exists, then, for fine distinctions between fact and opinion, conclusion and observation. In such cases, we believe it better to allow no exceptions to the procedure that will best ensure "a fair and accurate resolution of the question of guilt or innocence [by demanding] that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Nobles*, 422 U.S. at 238, 95 S.Ct. at 2170.

## CONCLUSION

We hold that the Western report contained opinions or conclusions of an expert who was part of the lawyers' investigative staff. The work product doctrine and Rule 15.4(b) therefore protect the report. Such protection extends to the state's unauthorized use of the report in grand jury proceedings. *State v. Superior Court, supra.*

We vacate the portion of the court of appeals' opinion dealing with the work product doctrine. We approve the trial court's order and deny the state's request for special action relief.

GORDON, C.J., and CAMERON and CORCORAN, JJ., concur.

MOELLER, J., recused himself and did not participate in the determination of this matter.